The next case set for oral argument this morning, and please forgive the pronunciation, but if counsel could please come forward, it's the case of Ugochukwu, Goodluck, Nwauzor, and Ferdinando Aguirre-Urbina v. The GEO Group. Good morning, Your Honor. Michael Kirk on behalf of the appellant, GEO Group. And if I could reserve five minutes for a rebuttal, I would appreciate it. Chief Judge Maguria, and may it please the court, I would like to begin with five quick points on the statutory issue before the court, before turning to the constitutional questions. First, the Washington Supreme Court has squarely held in the Anificen case that the term employee in the Washington Minimum Wage Act is to be interpreted exactly as the FLSA employee term is interpreted under that statute. And the court follows the federal courts of appeals in interpreting that. Are you saying that under Washington law, the Minimum Wage Act in Washington is in all respects identical to the FSLA? It's a narrower point, Judge Fletcher. I'm saying that Anificen held that the interpretation of the term employee is the same under both statutes. In all respects? The term of employee is the same? I mean, there are lots of nuances to employee. There are, Your Honor. But the court in Anificen said that they're functionally identical. I'm not sure I read the case the same way you do. Very well. Second point, every single federal court of appeals, including this court in the Morgan versus McDonald case, have held that detainees who participate in a work program on site that's operated by the detention facility are not employees. Now, were those people convicts? Some of them were, but there are also cases involving civil detainees, including immigration detainees. Are the cases you just cited cases involving convicts? Some of them are, yes, sir. Well, you cited Morgan. Were those people who had been convicted? Yes, they were, Your Honor. OK. So there are other cases that involve pretrial detainees then, not Morgan? We cited, if you look at the footnote, I believe it's three or four in the blue brief, in which we went through each court of appeals. We specified in the parenthetical which were civil detainees, which were criminals. But the Ninth Circuit cases, Hale and Morgan, those were criminal cases. Were they all convicts? Yes, Your Honor. Yeah, OK. Counsel, there seems to be a fairly substantial disagreement here about whether the Minimum Wage Act covers the detainees at this facility. You've taken a very strong position in your reply brief that we shouldn't certify that question to the Washington Supreme Court. At least some of your friends appear to be open to certifying some questions or that question to the Supreme Court. Why shouldn't we, in order to potentially avoid difficult or meaningful constitutional questions, such as intergovernmental immunity or preemption, why shouldn't we certify to the Washington Supreme Court? Because if they were to agree with you, then we wouldn't have to reach any of them, right? Well, Your Honor, our view on this is that Anificen, combined with the monolithic authority across the circuits, is sufficiently clear that certification is not necessary. And frankly, we just would prefer to avoid the delay. But obviously, the court does have the power to certify if it believes that that's the better course. I certainly agree with Your Honor that one of the prime considerations, and this is one of my other statutory points that go into this, is constitutional avoidance. The Washington Supreme Court's been very clear that if there's any question, if it's a close question, it must be resolved in a manner that avoids constitutional doubt. Now, my friend's primary position against me is focused in on the exemption, the explicit exemption. Before we leave the certification issue, if we were to certify to the Washington Supreme Court the interpretation of the Washington State Minimum Wage Act, if you lose on the unjust enrichment, which is also a question of Washington law, you lose the entire amount. That is to say, Judge Bryan awarded the, would have awarded the entire amount under a theory of unjust enrichment. He deducted from that amount the award under the Washington Minimum Wage Act. So do you want to certify at the same time the question of unjust enrichment under Washington law? I really don't think that's necessary at all, Judge Fletcher. If you lose on that one, you lose the entire amount. No, Your Honor, because we've appealed the unjust enrichment on several constitutional and state. No, I think you and I would be on the same page. If you lose the question, if you lose on unjust enrichment, if we affirm that judgment, you lose the entire amount. I do understand that, Your Honor. So I would think that if we're certifying to the Washington Supreme Court, we better certify both. Unless you think it's just such a slam-dunk winner that you win under unjust enrichment. I really do, Your Honor, and I hope, given my time limits, that I'll get to that. But I appreciate the point, Your Honor. Last point on the statutory question. My friends rely on the exemption of detainees in state, county, and municipal facilities and argue that because the exemption does not explicitly cover federal facilities, that that gives rise to an inference that federal detainees are not included. But almost from the outset, they give that argument away because they acknowledge that federal detainees in facilities directly operated by the federal government are not covered by the statute. So counsel, on this point, let's just take as an example the facility I'm familiar with, the Sea-Tac facility. Is there anything from any Washington court that you're aware of that has adopted this position that your friends have advocated, that the statute exempts Sea-Tac? Or is it just they're saying it as an Ipsy Dixit sort of thing? I'm not aware of any authority because, as far as I know, no one's ever questioned the proposition that it does not apply to Sea-Tac. And, Your Honor, obviously, the constitutional provisions are in the background. But to the extent that one is making an inference that from the absence of the word federal in the exemption of the state and county facilities, that inference is not strong enough to overcome the constitutional doubt provision. But in answer to your question, Judge Bennett, I'm not aware of any authority either way on that. I'm not sure I understand your answer. You're contending that we should read the exception to employee that goes to state, local, and municipal detention facilities. We should read the word federal into that? No, Your Honor. I'm saying that the absence of the word federal in that exemption does not give rise to an inference that the definition of employee includes federal detainees. And two reasons for that. Number one, if you did read it to include people at Sea-Tac, the constitutional problem would be obvious and overwhelming. And what would the constitutional problem be? It would be intergovernmental immunity. It would be both in terms of discrimination and in terms of interference with federal operations. It would be preemption. It would be all the arguments that we're making in this case. I think the law is actually fairly clear that if Washington law sought to impose a minimum wage requirement on things that go on at Sea-Tac, that it would be preempted. I agree with that. So I don't understand what the absence from the minimum wage act has anything to do with anything. It's just not covered because there's no need for an exemption because it's clearly preempted in any event. Whether one views it as preemption or one views it as interpreting the Washington Act to avoid the constitutional problem of preemption, the result's the same. Yeah, but assuming that's so, what consequence then follows that helps your case? I don't quite understand that point. The consequence that helps my case is that it allows you to decide this case without reaching the constitutional questions by interpreting the word employee to. But of course, the facilities that are exempted under the Washington Act and that are preempted, if they're federal facilities, those are facilities operated by the government. Here we have a facility operated by a private contractor. Well, Your Honor, let me turn to that because I think the fact that it's operated by a private contractor makes absolutely no difference in the context of this case. And let me start with intergovernmental immunity, the discriminatory branch of that doctrine. In United States versus California, this court squarely held that a state regulation that applied to a privately operated federal immigration detention facility in California, but did not apply and govern the state of California's jails, prisons, civil detention facilities, and whatnot. You're referring to our recent en banc case? No, Your Honor. I'm referring to United States versus California. It's cited in our papers. And you cite it, and you cite the footnote numerous times. I do, Your Honor. And in the recent en banc case, that was squarely rejected. And quite directly, I thought. Chief Judge McGregor, let me address that. Obviously, we cited the footnote perhaps too exuberantly in light of the footnote in the en banc decision. Well, enough that the majority in Newsom felt like they needed to set the record straight, which I think they did. And if I could address that, Your Honor, the footnote in the en banc opinion that said that the footnote seven in the United States versus California had gone too far, simply was making the point that the language in California footnote seven that said, for all purposes, contractors are the same as the government, that goes too far. I acknowledge that. But for purposes of applying the discriminatory branch of intergovernmental immunity doctrine, the en banc court in no way disavowed. Well, they cited cases. I'm sorry to interrupt you. You can, when it comes to costs, there can be a distinction there. And isn't that the same distinction that's present here? It's not, Your Honor. And forgive me, I have a fairly lengthy answer to this, because your question is directly on point and it's an important question. First point, the en banc decision did not address discrimination. That's important, because our first argument here is a discrimination argument. They expressly said that we're only interfering with federal operations in preemption, not discrimination. Second point, the footnote you're talking about that said that footnote seven in California went too far in completely equating contractors with the federal government was in the context of interfering with federal operations, not discrimination. And most importantly, nothing in the en banc opinion addressed or called into question the core holding in United States versus California, which again was simply this. If a state applies a regulation to an entity privately operated under contract to the government immigration detention facility, it cannot exempt the state's own jails and prisons. Do we know here if there's a state contract? I mean, if there was a state contract facility, whether they would be exempt? We do, Your Honor. I direct you to the third volume of the excerpt is a record at 496. The Department of Labor and Industries, the Washington state administrative agency that supervises the minimum wage laws, they've authoritatively stated that if persons are working for a private corporation at a facility. Isn't that a non-binding guideline? Well, Your Honor, it's the authoritative interpretation. Is it a non-binding guideline? It's not binding, Your Honor. And so would that be appropriate to certify to the Washington Supreme Court, that question? Again, I don't think it's necessary, but it is a state law question. I acknowledge that. Would you agree that if the Washington Supreme Court came down and said that those state contract facilities would not be exempt, that your position would not prevail? I would not agree with that, Your Honor. And let me tell you why. In United States versus California, there was no allegation that privately operated state facilities were subject to the regulation. The argument in United States versus California was the regulation applied to the privately operated federal immigration facility. It did not apply to the state-operated prison system, the state-operated jails, the state-operated civil facilities. That holding is game, set, and match for this case under the discriminatory branch of intergovernmental immunity. But then beyond that, Your Honor. Let me stay with this point for just a minute. Yes, Your Honor. You're referring to the guidance that's been put up by the Washington State Department of Labor. I was a few moments ago, yes, Judge Fletcher. I have to say that in your brief, you gave me the wrong cite. I did, Your Honor. And I have to apologize for that. My resourceful law clerk found it for me in any event. OK, here's the thing. My only defense is we corrected it in the gray brief. But my apologies. That was our fault. Listen, not to worry. No harm done. My law clerk found it for me. The language you rely on, in fact, is the language you cite in your brief, interpreting this exclusion or exemption from the definition of employee for detainees in state, local, and municipal facilities. The language you quote is, quote, residents, inmates, or patients of a state, county, or municipal correctional detention treatment or rehabilitative institution assigned by faculty officials to work on facility premises. So they're working within the state facility for a private corporation at rates established and paid for by public funds, are not employees. So these are not people who are working in a private facility. These are people, detainees, who are working in the public facility itself. And what this is designed to do is to allow the public facility to employ a private contractor to do some work within the facility. And then that private contractor can be authorized as to work within the public facility to employ inmates. That's different from operating in a private facility, which is what I think you were citing it for. Judge Fletcher, respectfully, I disagree with your reading of the sentence you just, your interpretation of the sentence you just read. And that's the sentence you quoted in your brief. It is, and it's the correct sentence. And you read it correctly, but I disagree with your interpretation. What that is saying is, if you're a detainee in a facility, it doesn't say it's publicly operated, it doesn't say it's privately operated. No, I'm sorry, that's wrong. I'll read you the previous sentence, which makes it clear that you're wrong. The previous sentence says, residents, inmates, or patients of state, county, or municipal correction facility that are not required to be paid minimum wage. Written second sentence, residents, inmates, patients, or municipal in to work on facility premises. So we're talking about public facility. Your Honor, I don't want to belabor the point, but respectfully, I do disagree. And the way I would put it is this. Northwest ICE detention processing facility, that's the subject of this case, is a federal facility, even though it is operated under contract with a private entity. And the reason I say that is only government. Can I interrupt? Of course, Your Honor. This is not talking about federal facilities. This is talking about state facilities. It is, Your Honor, but a state facility, a state prison operated under a private contract, is still a state prison. That's my only point. And again, I don't wish to belabor it. And I don't think you've got any authority for that point, other than the language that I just read to you. That's correct. OK. Counsel, I have just an unrelated question. The United States, in front of the district court, came in very strongly in support of you. We haven't heard from the United States on appeal. Should we ask the United States if they maintain the position? I would think their view of intergovernmental immunity would be relevant. We would certainly welcome a request to the United States. Obviously, the Department of Justice didn't share with me their thinking on where to deploy their limited resources. But as you say, the federal government's last word in this case was supporting our intergovernmental immunity discrimination argument. And we would welcome anything the department has to say on this case. Your Honor, I'm well into my rebuttal time. I'm going to give you some extra time. So if you have any other arguments. Well, I do, Your Honor. I do, thank you. I did want to get to, number one, preemption. In the en banc decision last week, the court made clear that whenever you have a situation involving inherently federal relations, the presumption against preemption does not apply. This is a federal detention facility that only the federal government can authorize. The relationship between GEO and the government is a federal contract. The relationship between GEO and the detainees is a quintessential federal relationship. GEO would have no relationship with the detainees, but for the federal government. So I think you have to set the presumption aside. And when you look at the statute, when you look at 8 U.S.C. Section 1555D, that statute in terms sets out how the rate of reimbursement for persons who are detained for immigration purposes is to be determined. It said it shall be set out in accordance with the rate set by Congress from time to time. And that's the key language in that statute. From time to time in the appropriation statutes. Well, Congress has only set the rate one time. And that was in 1978 for the 1979 appropriation bill. And it set the rate at $1 a day. And two different federal courts of appeals, the Fifth Circuit and the Federal Circuit, have looked at this. And they have said that the rate set by Congress is $1 a day. We've cited the cases, the Alvarado case and the Guerrera, if I'm recalling correctly. And so a holding that any rate other than $1 a day is permissible would create a circuit split here. And you're saying that the contract then violates the statute? Because the contract clearly allows payment of more than $1 a day. Judge Fletcher, it does. And what I would say is that it's not inconsistent with the federal statute because both permit $1 a day. But I would acknowledge that to the extent it permits. But you just construed the statute, as I heard you, as saying the maximum was $1 a day. The statute says it cannot be in excess of $1 a day. So did GEO. And therefore, the contract seems to me in conflict with the statute. To the extent the contract purports to authorize payment of more than $1 a day, I would agree with you. It is in conflict with the statute. Well, and you also paid more than $1 a day to some. So did the GEO violate the law by increasing worker pay when the facility's residents were ill and on hunger strike or unwilling to work? Your Honor, I would say that, and it was with ICE's acquiescence. But I would acknowledge that to the extent they paid more than $1 a day, it was inconsistent with what the statute clearly says. So they were in violation? You're saying here that GEO, on the record, was in violation? Your Honor, the only reason I'm hesitating is I'd have to think about that a little bit more. But I'm certainly acknowledging that paying more than $1 a day is inconsistent with a statute that says you cannot pay in excess of $1 a day. I'll give you just two more minutes to talk about unjust enrichment and then two minutes for rebuttal. Thank you, Chief Judge McGurria. In addition to all the constitutional points, I've got four state law points on injustice and enrichment. First point, my colleagues from the state of Washington  like unjust enrichment when there is available a remedy at law. Regardless of how you come out on the question of whether the Washington Minimum Wage Act extends to this case, the detainees had a remedy at law. If the statute applies, they had a remedy under the Minimum Wage Act. If it doesn't apply, they had contracts. Clear, longstanding, black-letter Washington law, consistent with law elsewhere. But plaintiff, in the unjust enrichment case, is not the plaintiff class. It's rather the Washington state. Now, did Washington state have, within the meaning of your argument, a remedy available at law? Well, Your Honor, I don't think this is going to be my second point. The key element in any unjust enrichment case is that the plaintiff must have conferred a benefit on the defendant. The state of Washington didn't confer any benefit on GEO. It's instead saying it's trying to stand in the shoes of the detainees who were outside the statute of limitations. That's not Washington's argument. It's standing in the shoes of those who would have been employed outside of the detainment facility. The problem with that argument, Judge Fletcher, is that the people who would have been employed never conveyed any benefit to GEO. So they can't bring, whether themselves directly or through the state of Washington, they cannot bring an unjust enrichment claim. The only people who arguably conveyed a benefit on GEO are the detainees. And that's why the court below acknowledged that, as you were pointing out earlier, Judge Fletcher, that he based the award on the amount that the detainees would have received. He deducted the amount that the plaintiff class got, and then effectively circumvented the statute of limitations by using unjust enrichment. Well, you can't do that because there was a remedy available to both the detainees and the state of Washington standing in their shoes. They could have brought the Minimum Wage Act cause of action on a timely basis. They didn't. So the remedy was there. They just didn't avail themselves. Third point. There's bedrock Washington law for the proposition that unjust enrichment is not available when the benefit is voluntarily conferred. It's undisputed that the voluntary work program is, in fact, voluntary, and that each of the detainees who participated signed an agreement required by ICE saying that, yes, they weren't coerced. They're volunteering. That alone. Are you saying it's undisputed? I mean, are you saying that everybody in the plaintiff class says, I was a volunteer, and that they don't dispute that? They've not argued. They didn't argue in response to this point that it was involuntary. Well, I guess we'll hear from them as to whether they think these people were volunteers. And certainly, there was no finding below that there was any involuntary. Well, I picked up your argument when you say undisputed. We'll see if it's disputed. Well, they didn't dispute it in their brief, is I guess what I would say, Your Honor. And then the last point, and it kind of circles back to the statutory arguments, one of the elements of unjust enrichment under Washington law is that the defendant has to know that it's receiving an unjust benefit. And Judge Bryan acknowledged that part of the showing is, obviously, GEO knew that it was receiving the labor from the detainees. But what it did not know was that that was in somehow violation of the law. Again, recall, every case from every court had said that in the context of detention, when it's on site working for the facility, that's part of the detention process. That's not employment. So GEO had no way of knowing that it was receiving an unjust benefit. And with that, Your Honor, thank you for your indulgence. Thank you. And I appreciate the rebuttal time. Thank you. Thank you, Your Honor. May it please the Court. Marcia Chen for the State of Washington. And so you're splitting the time equally? Yes. And I plan to focus on the Minimum Wage Act and the Intergovernmental Immunity Defenses. GEO is a for-profit company. And the Minimum Wage Act is a generally applicable law. After the en banc decision in Newsom, those plain facts are dispositive of GEO's statutory and constitutional arguments. Newsom makes two key points. On its very first page, it states that federal contractors do not stand on the same footing as the federal government. In other words, GEO is not the federal government. And two, Newsom explicitly recognized that after Newsom, there's considerable room for states to apply and enforce its generally applicable laws against federal contractors. And it identifies health and safety regulations as examples. The Minimum Wage Act is exactly that. How is it generally applicable in the detention arena? Is this applicable to any facility beside the one here? Any detention facility in the State of Washington other than this one? Yes, Your Honor. Which ones? It's applicable to all state contractors as well. And there are state facilities that are operated. And detainees, residents that are in those state contracted facilities, to the extent those residents participate in work release, the minimum wage applies. And there's a record of that? That's in the record that there are some residents of state facilities that are operated by contractors who are getting the minimum wage? Your Honor, respectfully, this is an affirmative defense. And it was GEO's responsibility to put it there. Anything in the record that establishes there is such a facility in the State of Washington? No, Your Honor. But I do not think that's dispositive of the discrimination prong. The square fact is that there are state contractors in Washington. And they are subject to the Minimum Wage Act. They are not exempt under 3K. Are you representing, as an officer of the court, that there are such facilities in the State of Washington operated by contractors and that they are paying minimum wage? Your Honor, I'm representing that there are state contractors that run private civil commitment centers, detention centers, and juvenile facilities. They do not have in-house work programs. But to the extent that they don't have in-house, to the extent they did have work programs. But they don't. They don't, but they allow for work release. So to the extent that residents are within a state contracted facility, and even though they're provided housing, and even though they're in the detention context, they are still entitled to the minimum wage. Why shouldn't we take at face value the guidance document from the Washington Department of Labor that appears to include the private detention facilities within the government institution's exemption? Your Honor, two points to that. First, the Labor and Industries Guidance is consistent with our position. As Judge Fletcher pointed out, that guidance simply states that public facilities are exempt under the Minimum Wage Act, which would include state and county facilities. The second point is that I would direct the Court to Dawson versus Steiger. Under Dawson versus Steiger, the scope of an intergovernmental immunity only extends to the extent of the exemption. And it is, quote, the letter of the law, the letter of the exemption, that applies for governmental immunity purposes. There's no need to reach the LNI guidance. And here, the exemption clearly states that only state, county, and municipal facilities are exempt. And this is a point of clarification that I want to make with counsel. Counsel suggests that federal facilities are also exempt under the Minimum Wage Act. That is not true. Again, as Judge Fletcher pointed out, federal facilities are immune under our state act. But under statutory construction principles, our Minimum Wage Act does apply to federal facilities. It is simply that it's immune. So under the statute, where it says employee includes any individual employed by an employer, that includes CTAC. Yes, Your Honor. But there's immunity principles that would prevent our application of the Minimum Wage Act. So the statute passed by the Washington legislature said whether it is a federal facility operated by the federal government or a facility like the one we have here, they have to pay minimum wage. But state facilities operated by state government in the same situation don't have to pay minimum wage. Under statutory construction principles, our Minimum Wage Act does apply to federal facilities. But immunity would render those residents immune. So you're telling us that we have to read the statute as covering something that is constitutionally incapable of covering? Your Honor, I would say that that is not the question that we have here. The immunity principles may apply in CTAC. And at this point, on this record, with a detention facility that's 100% privately owned and operated, there is no constitutional immunity problem. No, I understand that. But what I'm trying to figure out is how do we construe, or how do we characterize what the statute is doing here? There's no question about what, in fact, the statute cannot cover, wages paid at a federal facility, because they're going to be preempted. Yes, supremely. So why do you say, well, the statute covers it, but then the statute is invalidated to that extent? Why don't you just say, well, it's well-understood that the statute can't do that? Your Honor, both arguments would be applicable here. The state legislature certainly knew that it was an applicable. I guess I just want to be clear and ask maybe in a different way. So exemption does apply to state contract facilities. No, it does not apply to state contract facilities. If it did, then intergovernmental immunity, we would have to reverse based on intergovernmental immunity, correct? Correct. But the Minimum Wage Act certainly applies to state contractors. So is this a question that we should ask the Washington Supreme Court about? No, Your Honor. In our view, the interpretation of the Minimum Wage Act is very clear. There is an exemption, which makes it different from FLISA, where the Washington legislature specifically considered the detention context and identified that only state, county, and municipal facilities are exempt. So to you, it is very clear from the statute, with no ambiguity, that if there is somebody who is detained under Washington law, but they're housed in a facility that is run by a private contractor, that it's absolutely clear from the statute that they're entitled to minimum wage. Yes, Your Honor. And the state of Washington would enforce the Minimum Wage Act against a state contractor to the extent it is aware that there's a violation of the Minimum Wage Act. Clearly, that is not the case. Here, the violation of the Minimum Wage Act is by GEO. And I wanted to make one point. So let me make sure I understood that answer. You say the state of Washington would enforce the Minimum Wage Act as against a private contractor operating a detention facility and employing the inmates there. Correct, Your Honor. Has Washington state ever had occasion to do that? No, because the Washington state has not been aware of any state contractor violating the Minimum Wage Act in the same way that GEO has done here. And the fact that GEO is the only one that has violated the Minimum Wage Act cannot render GEO immune. I'd also like to make sure that I made the point that, regarding the certification of the state Supreme Court, we again think that the Minimum Wage Act is very clear in its exemption, and it does not cover GEO. And we don't think that this court should misconstrue the Minimum Wage Act in the name of constitutional avoidance, especially when there is no constitutional problem here. It is very clear that the private detention facility is subject to generally applicable laws. To the extent that GEO counsel suggests that this is the only federal court or federal circuit, or I'm sorry, there is no precedent for applying the minimum wage to a private business, GEO is wrong. In the Second Circuit under Duchess, in Carter versus Duchess Community College, and in the Fifth Circuit, in Watson versus Graves, federal circuit courts have found that FLISA, Federal Minimum Wage Act, applies to private businesses when they operate, even when the workers are inmates, criminal inmates. Here, not only is the work, even if you reach the Anfinsen factors, which we don't think you need to, or even if you reach the economic reality test, I think it is important to note that the work was voluntary. It was not subject or an incident to the incarceration, to any incarceration. Again, detainees worked for food, for toiletries, and other things like that. And when GEO chose, when detainees chose not to work, GEO had to increase the wages to $2 to $5 a day. That is a bargain for exchange. And so even if you apply the economic reality test, this is an employment relationship. I know your time's up, but I gave extra time to your friend across the aisle. Let me give you a little bit of extra time to talk about unjust enrichment. Sure. On the unjust enrichment claim, I think it is important to note that GEO is not challenging the state's authority, parent's authority, to bring an unjust enrichment claim. Washington has standing. And certainly, the unjust enrichment claim makes clear that the Minimum Wage Act is an incomplete remedy. More than detainees were harmed by GEO's practices. Again, GEO's CFO testified that 85 workers could have been hired from the Tacoma facility to complete the work that was done by detainees. That depresses wages in Washington and decreases the job opportunities in Washington. The Minimum Wage Act was incomplete. And that is why the unjust, and certainly it was within the court's equitable discretion to award unjust enrichment. And certainly, to the counsel's point regarding how it was calculated, that was also within the district court's equitable discretion. The remedy could have been calculated based on the prevailing wage or disgorgement of GEO's profits. Because the district court simply used the Minimum Wage Act to calculate it does not make it equivalent to the minimum wage. If we were to certify to the Washington Supreme Court the question as to how we should interpret Washington's Minimum Wage Act, should we also certify to the Washington Supreme Court the question of the operation of its unjust enrichment common law rule? We don't think it's necessary to certify to the Supreme Court on either question. So no. However, if the court were to rule, certainly that would make the most sense for the reasons you identified, Judge Fletcher, that it would make no sense to go back to the Minimum Wage Act because the state would obtain the entirety of its. The reason I ask the question is we've obviously got two important questions of state law. One's under the act, and the other one's under unjust enrichment. And if it turns out that there's no recovery available under the Minimum Wage Act, if the unjust enrichment claim stands, the entirety of the amount will be awarded against the GEO group. Correct, it would make the Minimum Wage Act even more incomplete. Thank you. Thank you. May it please the court. Jennifer Bennett on behalf of Mr. Noiser and the class of detained workers. I want to start and pick up with the discussion that Judge Fletcher and Judge Bennett were having about the meaning of the Minimum Wage Act, and specifically, the reason the Minimum Wage Act doesn't specifically exempt public federal facilities is because it didn't need to. It had long been clear by the time the Minimum Wage Act was passed that such facilities, as you mentioned Judge Fletcher, couldn't apply to such facilities at all. If you look at Washington Code generally, you'll see a number of provisions that exempt only state, county, and local X or Y. So for example, there's a provision about seizing gambling machines, and it exempts state, county, and local law enforcement officers in the course of their duty. There's a provision about money laundering, and again, it exempts state, county, and local law enforcement officers. It doesn't exempt federal officers, not because the statute is discriminating against the federal government, because it's very clear that the statute could never apply to those officers at all. But we still have the definition, employee includes any individual employed by an employer, and then it has the exemptions. And under your theory, whether it's CTAC or this facility, somebody doing work at the prison or the immigration detention facility under the auspices of the person or entity that's running it is an employee, right? No, Your Honor. I don't think that's right, or at least I don't think it's necessary to construe state law to require states to pass a law that exempts people that everybody knows could never be exempt. And I'll point this court to the United States Supreme Court's decision in Dela Cuesta, which is cited in the most recent en banc decision in Newsom. And the principle that that says is the federal constitution and laws of the federal government are as much a part of state law as the laws of the state legislature passed itself. And I apologize, this case isn't in the brief, but I can give you the site. The Washington Supreme Court has also adopted that principle in a case called In Re Sticks Rude. I'm happy after the argument to give you the site. But there's a fundamental principle of law that part of state laws is the federal constitution. And so there's no reason for states to explicitly say, oh, and by the way, the constitutional principle that we don't discriminate is a part of our law and we're going to pass exemptions, because everybody knows that's already true. And even were that not the case, then what that would mean is that if the state of Washington tried to enforce its law against the federal government, at that point, then a court would say you can't do that because you need to have, because that would directly control the government. It wouldn't mean that because Washington, relying on this longstanding principle that the federal government is exempt, that simply because Washington didn't explicitly put that in its law, that any private contractor that then contracts with the federal government is now exempt from Washington's generally applicable law. So when you look at the statute, your reading of Exemption K about the resident inmate patient of a state, county, municipal correction, detention, or rehabilitative institution clearly doesn't include in there at such a rehabilitative or treatment facility that is run under contract to a private contractor. Your view is, like your friend, your colleague, that it's clear under this statute that state private contractors have to pay the minimum wage. That's right. And the reason for that is, as GEO itself acknowledges in its reply brief at 10, and as we point out in our brief at page 22, if you look at the Labor Code and if you look at Washington Code in general, the Washington Code specifies, it says state, county, or local when it means public facilities. And when it means private facilities, it explicitly puts them in. So there are several parts of the code, rather, which say state, county, or local, or private facilities. And so we know from those other provisions that the state code distinguishes between those two in explicit. It makes no difference in your view that the only way somebody can be detained in, for example, a correctional or a detention facility is pursuant to the legal authority of the state or the municipality. No, Your Honor. And the reason for that, that's true of civil commitment. For example, the only way somebody can be civilly committed is by the state. But that doesn't mean that a civil commitment center or the hospital to which the person is committed is, therefore, an arm of the state or a public institution. Still a private institution, and people got there by federal law. And I'll note that there are a few other principles in Washington law that help us here, even if you think it's not clear. So the first principle is that the coverage of the Minimum Wage Act is interpreted broadly, and the exemptions are interpreted narrowly. And what the Washington Supreme Court has said is that something is only exempt if it is plainly within the text of the exemption. That is, the Washington Supreme Court has given us a principle that if you're not sure, then it has to be plainly within the text. If you're not sure, we err in favor of coverage. And the second thing the Washington Supreme Court has said in Anvinson and some other cases is we look at the legislative history as well. And if you look at the legislative history of this provision, it was added in 1975. And it was added at the same time that the legislature took out a wholesale exemption for all public employees. So essentially what the legislature did is said, hey, we don't want all public employees to be covered. We only want some public, or rather, we don't want all public employees to be exempt. We only want some public employees to be exempt. And so this exemption is one of a number of categories, all of which are solely public employees that were used to replace the general wholesale public exemption with a narrower set of exemptions.  I think the text is clear, but to the extent it's not, we have these principles of ambiguity is construed in favor of coverage and look to the legislative history and both of those point in favor of coverage. And unless there are further questions on either the Minimum Wage Act or intergovernmental immunity both of which I'd be happy to address, I want to turn briefly to the preemption question. So GEO's only argument on preemption is an argument of conflict preemption. But GEO's missing the fundamental ingredient of conflict preemption, which is a conflict between state and federal law. Neither of the statutes that GEO cites says anything at all about what a private contractor must pay its workers, detained or otherwise. So you have 8 U.S.C. 1555, this is the 1950 Authorization Act, and I'll note that was passed before the Immigration and Nationality Act. It turns out GEO is not violating federal law after all? I do not believe that GEO, I take that back. I believe there may be a strong argument that GEO is violating federal law and that it's violating the Fair Labor Standards Act. But I do not think that the contract with GEO, I do not think it is violating the laws that GEO has cited because those laws don't apply. You know, the Authorization Act doesn't say anything about what private contractors must pay its workers and neither does the Appropriation Act that GEO cites. The contract may, in your view, be violating the FLSA. The contract says at least a dollar a day and to the extent that that, I don't know that that doesn't violate the FLSA either because the FLSA is higher than a dollar a day. It is also certainly at least a dollar a day. But to the extent it's being construed as giving GEO permission to do so, then I do think that that would violate the Fair Labor Standards Act. But this court doesn't need to reach that question. That's not in front of us. Sorry? That's not in front of us. Exactly, this court doesn't need to reach that question. The question here is just what does Washington's Minimum Wage Act mean? And that's a question of how would the Washington Supreme Court construe that statute? And the Washington Supreme Court has told us we look at the text and we construe its coverage broadly and exemptions narrowly. And then there are the supremacy cause questions and the derivative sovereign immunity questions. So it doesn't matter what the scope of FLSA is. The only other preemption argument that GEO has made is this argument about discretion, that there is some general discretion given through the Department of Homeland Security to set these rates. But this court and the Supreme Court have repeatedly rejected the argument that some sort of free-floating discretion or free-floating underlying purpose of Congress that's unmoored from any statute or any regulation has preemptive effect. In every single case, if you look at this court's decision in Newsom, on Bonk, any of the cases it cites, in every case I'm aware of in which the Supreme Court or this court has held that something about discretion preempts state law, there were two things that needed to be true. One, a statute that specifically gave an agency or another actor that discretion. And two, a conflict with that statute or with the agency's exercise of discretion under that statute. So in Newsom, for example, the statute said, ICE has the responsibility to find appropriate places to detain immigrants. And the conflict was the state law said, actually, you can't do that in California at all, but had that effect. In the Crosby case, for example, the statute said the president has discretion to either lift or impose sanctions. And the purpose of that discretion is so that the president has leverage to affect the human rights condition in Burma. And the conflict was a Massachusetts state law that said, actually, no, there's no discretion. We're just imposing sanctions. And that took away the leverage from the president that the federal statute was trying to give it. So in every single case, you have the statute plus conflict. Here, there's neither. There's no statute that gives any discretion specifically over this issue to the Department of Homeland Security or anyone else. And there's no conflict. In fact, the contract with ICE specifically says, you must obey state law. And that feature is also fatal to GEO's derivative sovereign immunity claim. And I realized- Can I ask you a question? Sure. I asked Mr. Kirk about footnote seven in California, in the California case, and then the Newsom case and the impact on this. I'd like for somebody to respond. Could you respond to that? Sure. I think this court's en banc decision in Newsom squarely forecloses any of the direct regulation theories that GEO has made. And the reason for that is exactly the reason you pointed out. GEO's direct regulation theory is solely based on the idea that a federal contractor is treated the same way for intergovernmental immunity as the federal government. And the footnote that you referenced in the en banc decision in Newsom explicitly says that's not right. And so, and what Newsom says is, is the only way you have a sort of direct regulation theory of a federal contractor is if the state law is actually controlling what the federal government does. It says, if it's just increasing costs, that is not an intergovernmental immunity problem. And here, that's exactly what's happening.  doesn't tell ICE who to detain or where to detain. It doesn't tell ICE what the work program should be. All it does is increase GEO's labor costs. That's not even increasing the costs to the federal government. It's just increasing costs to a federal contractor. And I think under Newsom, that's squarely permissible under intergovernmental immunity. It might increase the cost of the federal government the next time GEO enters into a contract with the federal government. Potentially, but again, case after case from the U.S. Supreme Court and Newsom itself from this court says, increasing costs to the federal government is not enough. So if you look at the Penn Dairies case from the Supreme Court, for example, that was a price control case. And so there was a state law that said milk has to be charged a minimum price. And the question was, could you apply that law to a military contractor who's selling milk to the government? And what the Supreme Court said is, yes, sure. That might increase what the federal government pays for milk. In fact, it necessarily will. The whole point of the lawsuit was that they wanted to charge less. And what the Supreme Court said is, that's not enough. What you need is direct control of the government's operations or some sort of discrimination, neither of which are present here. Thank you, Your Honor. Thank you. Mr. Kirk, I'll give you two minutes. Thank you, Your Honor. I want to pick up on the very last point my friend just made, because I strongly disagree with the proposition that the en banc decision destroys our direct regulation argument. In fact, it compels reversal on that ground alone. And let me explain why. The court, as my friend suggested, did draw a distinction from the Supreme Court's case law between laws that on the one hand control federal operations versus laws on the other hand that simply raise the federal government's costs. But the court went further in analyzing where that line actually is. And I want to direct the court's attention specifically to page 28 of the slip opinion in Geo v. Newsom, where the court said, held, that state statutes that would have impermissibly interfered with federal functions by overriding federal contracting decisions are unconstitutional. And in explaining what it meant by that point, the court had an extended discussion of the Supreme Court's decision in Public Utilities Commission versus the United States, where the state law in question purported to regulate the rates that truckers who contracted with the United States would pay. Essentially, California had a regulated scheme for trucking rates, but the United States was contracting for different rates. And that's exactly what we have here. The rates in question in this case are the rates paid to immigration detainees. Those rates are specified both in the performance-based national detention standards promulgated by ICE and in Geo's contract with the government. You know, before your time runs entirely, I've got a question. How far does your argument go? What I'm thinking about is the following. The federal government does an awful lot of its work, performs a lot of its functions through private contractors. That's true, Your Honor. For example, maintenance of this building, I would guess, is performed by a private company. Are those employees of the private contractor, the private contractor who's performing a function for the federal government, can Washington's minimum wage law apply to those employees? Judge Fletcher, I would say so long as there's no federal regulation or nothing in the federal contract that specifies a different wage, then I would acknowledge that the janitors in this building or... Let me go to your two points. On the case in front of us, there's nothing in the contract that specifies a different wage. That is to say, Geo is allowed to pay more than a dollar a day. It specifies that Geo must pay a minimum of a dollar a day. It clearly authorizes Geo to pay less than the minimum wage. So we... No, I'm sorry. It authorizes Geo to pay more than a dollar a day. So there's nothing in the contract that forbids Geo from paying minimum wage. There's nothing that directly forbids it other than the statute that we talked about earlier. And I want to make one... What statute is that? This is the one from the 70s? Yeah, the one that says you cannot pay in excess. I'm afraid for me, that's a loser of an argument. Understood. I want to make... I guess, but I want to just follow up. I mean, how is there interference with the contract? The contract allows for higher wages. So I want to make sure I try to understand your point, Mr. Kirk. The contract permits payment at a rate below the minimum wage. That is a conflict with the contract. And I want to make one final point in terms of the interference with federal operations that I think is very important here. The effect of the judgment in this case has been to lead to the complete suspension of the voluntary work program. And the reason for that is the judgment requires Geo to treat the detainees as employees. Federal criminal law and Geo's contract both prohibit Geo from employing undocumented immigrants as employees. So as a direct result of this case, the entire program has been suspended. And if that's not an interference with federal operations, I don't know what is. It is ubiquitous in this country that detention facilities of all stripes, state, federal, local, prisons, pre-trial detention, that a core feature of detaining people is work programs. And yet the effect of the judgment below has been to shut down the work program. And so if that's not an interference with federal operations, I don't know what is. And thank you for your indulgence, Chief Judge Maguria. I mean, just before you end, don't some of these detainees have work authorizations? Some of them do, Your Honor, but- So is there anything preventing Geo from hiring them? Even that would be a major interference with federal operations. If the judgment is upheld, I have no doubt that both Geo and ICE will look at the question of, well, can we have a limited work program for people who have authorizations? But even that would be a major interference in federal operations because now you have a situation where some detainees are allowed to work and others are prohibited. And that obviously leads to all kinds of unhappiness and disruption with people who are not allowed to work because of that distinction. So I would say that does not solve the problem of the interference with federal operations. Thank you. Thank you, Your Honor. I appreciate it. Thank you all for your well-presented arguments here today on this very challenging case. So Ms. Cheyne, Ms. Bennett, Mr. Kirk, thank you so much. We appreciate it. The case of Nazar and Aghedi Ud-Binab versus the Geo Group is now submitted. And that concludes our docket for today. We are adjourned. Thank you. Thank you, Your Honor. Thank you. Thank you. All rise. This court for the discussion stands adjourned.
judges: MURGUIA, FLETCHER, BENNETT